## Leib v. Employers' Liability Assurance Corporation, Ltd.

*J. J. Curran* and *Jos. G. Seesholtz*, for plaintiff.
*R. M. Bashore*, for defendant.

HICKS, P. J., March 4, 1935.—The third statement of claim, filed in this case, is before us upon a third statutory demurrer.

It appears from this second amended statement that the plaintiff is engaged in the business of writing and executing surety bonds on behalf of companies engaged in such business and particularly for the National Surety Company, a New York corporation. On or about September 11, 1931, the defendant orally applied to the plaintiff as agent for the said National Surety Company for the writing, execution and delivery of a bond in the sum of $69,894.25, representing one eighth of the amount of a bond issued by the defendant in which the School District of the City of Pottsville was the obligee and Thad Reindollar & Son, contractors, and the defendant, the obligors, at the usual rate an!d proposed to pay the premium therefor to him in the sum of $1,048.41. This application and proposal were submitted by the plaintiff to the National Surety Company for its approval. On the same date, the defendant made a like proposal to a manager of the National Surety Company for the furnishing of the said bond by it for the account of the plaintiff as reinsurance. On September 24, 1931, the applications and proposals aforesaid were accepted as made by the plaintiff and his company. As a result, the plaintiff wrote, executed and delivered the said bond to the defendant. It is further averred that "said premium by practice and custom in the insurance trade, was charged by the National Surety Company to the account of the plaintiff and he became liable therefor to pay the said amount less a commission of 30 percent for his services to the National Surety Company." However, when the application was made for the bond to the plaintiff on September 11, 1933, the representative of the defendant orally proposed, further, that the defendant would pay 70 percent of the premium direct to the plaintiff's company and the balance to him. This also was agreeable and after the execution of the bond, the defendant did pay 70 percent of the premium to the plaintiff's company but failed and refused to pay the 30 percent to him. Identical averments are made respecting a bond in the sum of $36,860 issued later. The suit is to recover the unpaid 30 percent of the premiums on both bonds.

An affidavit of defense was filed raising the following questions as grouped by us: (1) There was no consideration for the alleged promises; (2) there is no allegation that the plaintiff, seeking to recover commissions, is an insurance broker, duly authorized to transact business in this State; (3) since he was acting as an agent for the National Surety Company, he is obliged to look to it for his compensation; (4) the policy of insurance and bond of indemnity are not set out; (5) the bonds were made, executed and delivered by the National Surety Company; (6) the statement is vague and indefinite and does not allege what the bonds were or the terms thereof; (7) the statement contains inconsistent allegations.

We ignore the fourth, sixth and seventh reasons as not the proper basis of a statutory demurrer. They should be raised upon a motion to strike off or for a more specific statement of claim.

As to the second reason, that the statement contains no allegation that the plaintiff was authorized to do business in this State, i. e., had no license, we conclude from the defendant's written argument, it raises the question whether such allegation is a necessary ingredient of the statement so as to state a good cause of action. It is not now necessary to decide whether the plaintiff can recover if he was not licensed, but it will become important at the time of trial. Reilly v. Prudential Ins. Co., 264 Pa. 61, and 14 R. C. L. 869, sec. 42, are to the effect that he cannot. Whether Lamb v. Condon et al., 276 Pa. 544, in construing the Fictitious Names Act of June 28, 1917, P. L. 645, sec. 1, as amended by the Acts of May 10, 1921, P. L. 465 and June 29, 1923, P. L. 979, 54 PS §21, as to a nonregistered plaintiff, overruled in principle Reilly v. Prudential Ins.

Co., supra, in holding that nonregistry did not defeat an action to recover commissions by a real estate broker trading under a fictitious name, we do not now decide. See also Kochersperger v. Farmers' Bank of Mifflinburg, 16 D. & C. 263; Rome Sales & Service Station v. Finch, 111 Pa. Superior Ct. 226; Welmet B. & L. Assn. v. Matchica, 310 Pa. 275.

It is true that neither the Fictitious Names Act as amended, nor the Act of May 17, 1921, P. L. 789, sec. 604, as amended, requiring insurance agents and brokers to be licensed, prevent suits from being instituted or maintained by a nonregistered or non-licensed plaintiff, yet each make the violation a misdemeanor.

We do hold that the plaintiff, in his statement, need not aver that he is licensed by the Insurance Department of the State as a condition precedent to maintaining the action. If he is not licensed, it is a matter of defense which cannot be raised by statutory demurrer where the statement does not disclose that fact but must be raised in its only available way, in an affidavit of defense to the merits. In reaching this conclusion, we follow the decisions on this question under the Fictitious Names Act. See 54 PS §21, note 5.

The fifth reason, that the bonds were made, executed and delivered by the National Surety Company, traversed the allegation in the statement that the plaintiff wrote, executed and delivered the bonds, and requires proof that it was the plaintiff who acted as agent for the National Surety Company, unless the defendant means that plaintiff cannot recover even though he did write the bonds, as he alleges, since in doing so he acted as agent for the said company. This will be dealt with in discussing the first and third reasons.

These reasons are that no cause of action is stated because the plaintiff was acting as agent for the National Surety Company in writing, executing and delivering the bonds and it must pay him, there being no consideration for the alleged promises of the defendant to pay the commissions to him and the balance of the premium direct to his principal.

It is averred that the premiums, by practice and custom in the insurance trade, were charged by the National Surety Company to the account of the plaintiff and that he became liable therefore to pay the said amount less a commission of 30 percent for his services. It is further averred that it was agreed between the plaintiff and the defendant, that instead of the latter paying him the full premiums when the bonds were delivered and his remitting the same less his commissions of 30 percent to his company, the defendant would pay 70 percent of it direct to his principal and the balance to him, which it failed to do. He sues on this agreement for this 30 percent and the consideration for the defendant's promises was his execution and delivery of the bonds applied for. It seems to us, as far as this feature is concerned, if he can sustain it by proof, he may recover on such agreements.

We agree that the statement is prolix, not concise, ambiguous and inconsistent, but these are defects of form and not of substance and are not the subjects of statutory demurrer. We think plaintiff has stated a cause of action calling for an affidavit of defense on the merits.

And now, March 4, 1935, the affidavit of defense raising questions of law is overruled and the defendant is directed to file an affidavit of defense to the merits within 15 days from this date.